UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HIGH POINT PLACE
CONDOMINIUM ASSOCIATION
INC.,

    Plaintiff,

v.                                                                                  Case No.:  2:23-cv-1114-JLB-KCD

QBE INSURANCE
CORPORATION,

    Defendant.
_____/

## ORDER

Before the Court is Defendant QBE Insurance Corporation's Motion to Set Aside a Default.[1] (Doc. 20.) Plaintiff High Point Condominium Association Inc. responded in opposition (Doc. 21) and QBE replied (Doc. 24). For the below reasons, the motion is granted.

## I. Background

This is a Hurricane Ian case that alleges the breach of three flood insurance policies. QBE did not respond to the complaint. High Point thus secured a clerk's default. (Doc. 10.) QBE learned of the default, appeared, and now moves to set it aside. (Doc. 20.)

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(A), this motion was referred to the undersigned for disposition by an order subject to any Rule 72(a) objections. *See* Local Rule 1.02; *see also Bell v. Chambliss*, No. 3:13-CV-479-J-34JBT, 2015 WL 5997047 (M.D. Fla. Oct. 14, 2015).

The Court recounts QBE's explanation of what happened that led to the default, supported by declarations. (Docs. 20-1, 20-2.) On December 6, 2023, QBE was served through the secretary of state. (Doc. 4.) Upon service, the complaint should have gone to QBE's Legal Intake email inbox. A senior paralegal at QBE, Lizvette Fresco, tracks this email inbox.

On January 2, 2024, High Point moved for a clerk's default, and the clerk entered a default the next day. (Docs. 9, 10.) A week later, Fresco received an email from QBE's Claim Support Legal Admin Team, telling her a motion for a clerk's default was filed. The email further stated that the complaint was originally sent to QBE's Corporate Legal Intake email inbox on December 6, 2023. Fresco immediately searched that inbox to find the email, but it was not there.

Fresco then contacted QBE's Information Technology team about the missing email and asked them to run a search to locate it. After performing a search of QBE's email system, IT located the email in Corporate Legal Intake's "recoverable items" folder. The IT engineer who conducted that search, Timothy Urbaniak, explains that the "recoverable items" folder recovers any emails that have been permanently deleted. Although Urbaniak located the December 6 email in the "recoverable items" folder, he has no explanation for why it was misdirected to an unintended location. He also says QBE continues to investigate the issue.

The day it learned of the default, QBE hired counsel to defend this case, and Fresco forwarded the complaint and motion for clerk's default to the firm. At that point, QBE's counsel tried to contact opposing counsel, and entered an appearance for QBE on January 16, 2024. The next day, QBE forwarded the case file documents to counsel. On January 26, 2024, QBE moved to vacate the default. (Doc. 20.) QBE asserts that it has many defenses to this case related to coverage and scope, including for flooring damage, elevators, electrical work, mitigation, and landscaping, and a potential breach of the policy defense. (Doc. 20 at 3.)

## II. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure states that a district court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Good cause is a mutable standard, varying from situation to situation." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). "It is also a liberal one—but not so elastic as to be devoid of substance." *Id.* The defaulting party bears the burden of establishing good cause. *See Afr. Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999).

Although not "talismanic," factors in the good cause analysis include "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a

3

meritorious defense." *Compania Interamericana*, 88 F.3d at 951. Also instructive is "whether the defaulting party acted promptly to correct the default." *Id; see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 n.7 (11th Cir. 2014). This test is measured against the backdrop that defaults are disfavored because of the "strong policy of determining cases on their merits." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).

### III. Discussion

Applying Rule 55(c), as the Court must, the default cannot stand. For starters, the record does not reveal willful conduct. *See Compania Interamericana*, 88 F.3d at 951-52 ("[I]f a party willfully defaults . . . the court need make no other findings in denying relief."). Willful conduct is "either an intentional or reckless disregard for the judicial proceedings." *Id*. at 951. QBE did not respond to the lawsuit because of an IT error in its internal procedures for processing complaints. There is no sign that the failure was intentional or reckless. A better characterization of what occurred was negligence. And good cause "encompasses situations in which failure to comply with a filing deadline is due to negligence." *Carmody v. MHM Sols., Inc.*, No. 08-14198-CIV, 2008 WL 2844038, at *1 (S.D. Fla. July 23, 2008).

For its part, High Point argues that the motion and declarations are "devoid of any reasonable factual explanation of how an extraordinary sequence of events supposedly occurred." (Doc. 21 at 5-6.) But a lack of

4

explanation for the mistake does not vitiate good cause. QBE's IT engineer explained that it is unknown how the mistake occurred, which reinforces that the failure was not intentional or reckless.

Hearing this case on the merits is also appropriate because QBE states it has at least colorable defenses to the claims. Even "a hint of a suggestion of a meritorious defense" renders the defense colorable. *Bank of New York v. Brunsman*, 683 F. Supp. 2d 1300, 1303 (M.D. Fla. 2010) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 n.4 (5th Cir. 1979)).

Finally, the Court is satisfied QBE acted promptly. Although over two weeks passed between QBE learning of the default and moving to set it aside, QBE was not idle during that time. QBE immediately hired counsel and contacted High Point to discuss the default. Then after counsel appeared, they moved to set aside the default just over two weeks later. Of note, QBE's motion required counsel to obtain the detailed declarations of two individuals within the company. Considering this timeline, the Court is satisfied QBE did not sit on its hands.

Weighing the facts surrounding QBE's default and the Eleventh Circuit's "strong policy of determining cases on their merits," the Court concludes that the default judgment should be set aside. *Perez*, 774 F.3d at 1339.

Accordingly, it is now **ORDERED**:

1. Defendant's Motion to Set Aside a Default (Doc. 20) is **GRANTED**;

  2. The Clerk is **DIRECTED** to set aside the clerk's default (Doc. 10);

  3. Defendant is directed to respond to the complaint by **April 25, 2023**.

**ENTERED** in Fort Myers, Florida on April 11, 2024.

*/s/ Kyle C. Dudek*
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record